**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN J. PENNINGTON,<br><br>       Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Case No. 1:23-cv-00025-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 19, 21) |

**I.**

**INTRODUCTION**

Brian J. Pennington ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied, Defendant's cross-motion for summary judgment shall be granted, and Plaintiff's social security appeal shall thus be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 9, 11, 12.)

1

# II.

# BACKGROUND

### A.   Procedural History

On March 17, 2020, Plaintiff filed a Title II application for a period of disability insurance benefits, and a Title XVI application for supplemental security income benefits. (AR 320-38.)  Plaintiff's applications were initially denied on August 25, 2020, and denied upon reconsideration on February 4, 2021.  (AR 245-50.)  On December 7, 2021, Plaintiff appeared for a hearing before Administrative Law Judge Joseph R. Doyle (the "ALJ"). (AR 139-177.)  On February 8, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 18-43.) On October 31, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-7.)

On January 4, 2023, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On April 17, 2023, Defendant filed the administrative record ("AR") in this action.   (ECF No. 13.) Following extensions of the briefing schedule, on August 11, 2023, Plaintiff filed an opening brief in support of summary judgment. (Pl.'s Opening Br. ("Br."), ECF No. 19.)  On September 25, 2023, Defendant filed an opposition brief and motion for cross-summary judgment.  (Def.'s Opp'n ("Opp'n"), ECF No. 21.)  Plaintiff did not file a reply brief.

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 14, 2021:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since October 9, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: schizoaffective disorder; anxiety disorder and chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except could only occasionally climb ladders, ropes or scaffolds; could only occasionally climb stairs or ramps; could have only occasional exposure to concentrated airborne irritants, such as fumes, odors, dusts, gases and poorly ventilated areas; limited to the performance of simple, routine and repetitive tasks; limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting; limited to only occasional interaction with co-workers, and, while able to work in the vicinity of the public, the claimant should have no interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 21, 1975 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 24-38.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

1 Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's

judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff presents one main challenge with two interrelated components: that Plaintiff did not intelligently or knowingly waive his right to representation and was prejudiced as a result due to lack of development of the record.

### A.   General Legal Standards

When applying for disability benefits, the claimant has the duty to prove that she is disabled. 42 U.S.C. § 423(c)(5)(A). However, the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

If "the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan, 242 F.3d at 1150. This is because "Social Security proceedings are inquisitorial rather than adversarial." Schiaffino v. Saul, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting Sims v. Apfel, 530 U.S. 103, 111–12 (2000)). In particular, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)).

"Although [a] claimant has a statutory right to counsel at her hearing, she may waive that right and elect to proceed without counsel." Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal.

1984). "Lack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985); see also Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979) (noting that even if a claimant does "not completely understand his right to representation by counsel, he would not be entitled to relief absent a showing of prejudice or unfairness in the proceedings").

### B. Plaintiff's Primary Arguments

Plaintiff argues he was prejudiced by unknowingly and unintelligently waiving his right to counsel, and that the ALJ had a heightened duty to develop the record given he was unrepresented and suffering from a mental illness.

Plaintiff argues he was planning on having his father advocate for him at the hearing and believed he could have his father present at the hearing to testify on his behalf and explain questions and procedures, as an attorney would have done. Plaintiff proffers a review of the hearing transcript reveals that both he and his Father were unaware that a "witness" and an a "representative" are not the same role in an SSA hearing; and the ALJ appears to have unintendedly "coaxed" Plaintiff and his father into removing his father as "representative," such that he was unrepresented and unaccompanied at the hearing resulting in an unintelligent and unknowing election to proceed without an attorney.

Plaintiff submits that the hearing transcript reveals that there was confusion over whether the father was his "appointed representative;" that the Father testified that he mailed in the "paperwork" seven months prior, but the ALJ stated there was no appointment of representative paperwork in the file, and notes the ALJ and the Father had the following exchange:

> Father: And he can talk. It's just that sometimes, if we need clarification, I can maybe help a little bit. I don't need to interfere too much. We'll try to let him talk, and if I need to clarity something, I can do that. I can help him, okay?
>
> ALJ: I understand what you're saying, sir. So, there's two different tracks here. One is an appointment where actually you're acting as a representative and you're obtaining evidence on his behalf and you are asking questions of the claimant. You cannot, however, act as a witness. In other words, you may not testify, you may not tell me facts about his situation, and so forth. In my experience, many

8

        unrepresented people, when they're appointing a (AR 142) family member, what they really want is for that family member to act as a witness, so that I can hear from that family member about their condition. So, back to you, Brian Pennington. Sir, did you understand the explanation I just gave to your father?

        Father: Yeah, so CLMT: Yeah, I did.

        Father: I think that -- in that case, Judge, then I think a witness would probably be a better situation.

(AR 143.)

        Plaintiff highlights the ALJ then said to Mr. Pennington: "All right, very well. So, Brian, you did hear my explanation, again, I just want to be clear on this because you said you did execute some appointment paperwork, **but it sounds as though you intended for your father to simply act as a witness rather than as your representative, and you perhaps would like to have him testify at some point, is that correct?" To which Mr. Pennington responded "yes." The ALJ proceeded to read Mr. Pennington his extensive "representation rights," including the breakdown of fees and the duties of an attorney and informed him that he could postpone the hearing in order to find an attorney. When the ALJ asked him if he wanted to proceed with the hearing; Mr. Pennington stated simply "yes"** (AR 144-145, emphasis added). See Vidal v. Harris, 637 F.2d 710, 713-715 (9th Cir. 1981) (finding that the Plaintiff was prejudiced by his lack of representation because the Plaintiff's "brief answers to the administrative law judge's statements concerning the right to representation leave[s] a serious question whether the right to counsel was knowingly waived at the hearing.").[5]

        Plaintiff argues of significant note is that his father was **not** in the room with him when the ALJ went through the litany of Representation Rights, fees, duties of a lawyer, how to obtain a lawyer, the esoteric issues at bar, and most significantly that the hearing could be postponed to give the family time to obtain a lawyer/representative and also allow for his father to testify as a witness. (AR 144-145). Plaintiff argues he and his father were undoubtedly under the impression that his

---

[5] However, as the Ninth Circuit continues here, "[b]ut the issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by Cox, supra. We hold that the burden was not met. The claimant's case was clearly prejudiced by the inadequate examination of the vocational expert." Vidal, 637 F.2d at 714.

father would be with him during the hearing to help clarify matters for his mentally disabled son. (AR 142).

Plaintiff contends that "most notably," he is never left alone in the house and that that he testified on a typical day: "**My mom's here with me all day 'til my dad gets home, either it's one of them here with me, so if I get too paranoid, I come out and I talk to them**, or I say [phonetic] I'm stretching my legs [INAUDIBLE], then I go back in the room. The more people I see throughout the day, it seems like the more voices I hear. **It just seems like the more people I see, the worse it gets, so I try not to see too many people**, and I just have lunch, and then wait for dinner…But I just sit there and I talk to myself, I have conversations with myself, I hear people. **It makes me a very detached person, I don't know how else to say it"**  (AR 161 (emphasis added).)

1. <u>The Kings View Records</u>

Plaintiff argues that "most significantly," he was prejudiced by the lack of development of his mental health issues, specifically the lack of development of mental health treatment at Kings View. Plaintiff contends he has highlighted extensive testimony from both him and his father that his mental health issues are causing the biggest obstacles to his ability to sustain normal work activity. (AR 155, 166.) However, Plaintiff contends the ALJ dismisses the severity of his mental health symptoms because the ALJ opined that documentation of mental health treatment was "minimal," specifically because mental health began in April 2021 and the ALJ mentions at least three times in the decision that "efforts to obtain more recent mental health notes were unsuccessful." (AR 32; AR 33 ("Subsequently, there was indication of failed attempt to reach the claimant, followed by an agreement to meet on May 25, 2021 . . . [y]et, the record lacks any further notes from Kings View [and] [a]s previously noted, efforts to obtain alleged outstanding records were unsuccessful, with the provider noting that no such records.").)

///
///
///
///
///

**C.    The Court finds the Plaintiff was not Prejudiced by an Unknowing and Unintelligent Waiver of the Right to Representation**

Plaintiff's challenge merits some consideration given the ALJ did note in the opinion the absence of records at multiple points as Plaintiff highlights. Specifically, following a summary of mental health treatment, the ALJ noted the Kings View record request as follows:

> Yet, aside from use of medication, the first documentation of mental health treatment was in April 2021 (Ex. 10F). While noting reference to past assessment of psychosis and bipolar disorder in March 2021, this examiner evaluated the claimant and found schizoaffective disorder the most appropriate diagnosis, a diagnosis that takes into account psychotic and mood symptoms (Ex. 10F/20). Notably, the claimant was irritable and hostile during his appointment (Ex. 10F/15-17). Moreover, he reported depressed mood, mania, low motivation, isolating behavior, feelings of worthlessness, sleep issues, daily auditory hallucinations, anxiety and irritability (Ex. 10F/15-19). Yet, while he alleged that one job ended because of his hallucinations, his testimony generally indicated non-health related business reasons for past job losses (Ex. 10F/17-18). Further, mental status exam observations reflected good orientation, intact memory, appropriate thought content, coherent thought processes and estimated average intellect (Ex. 10F/17-19).
>
> The next month, a nurse practitioner evaluated the claimant and assessed schizoaffective disorder, noting mood, psychotic and anxiety symptoms (Ex. 10F/7-10). The claimant again reported hearing voices, being depressed, isolating behavior and sleep issues (Ex. 10F/7). Again, he alleged that he was fired for responding to the voices he heard, and thus, scaring customers (Ex. 10F/7). Yet, his testimony generally alleged that past jobs had ended due to business slowdowns. On exam, he appeared depressed but calm (Ex. 10F/8-10). He did endorse paranoid delusions and hallucinations (Ex. 10F/8-10). Yet, thought processes were intact (Ex. 10F/8-10). Moreover, while intellect was estimated as below average, general fund of knowledge was adequate, memory unimpaired and attention intact (Ex. 10F/8-10). Further, insight and judgment were felt to be only mildly impaired (Ex. 10F/8-10). He was started on a regimen of psychotropic medications (Ex. 10F/8-10).
>
> **Subsequently, there was indication of failed attempt to reach the claimant, followed by an agreement to meet on May 25, 2021 (Ex. 10F/34, 36). Yet, the record lacks any further notes from Kingsview. As previously noted, efforts to obtain alleged outstanding records were unsuccessful, with the provider noting that no such records (Ex. 12F). However, as of an appointment for physical issues in August 2021, the claimant again presented as cooperative with appropriate mood and affect (Ex. 11F/57-58).**

> Overall, the claimant has anxiety and schizoaffective disorders, the latter diagnosis comprised of a combination of psychotic and mood disorder symptoms. He has consistently reported anxiety, issues with isolating behavior, mood symptoms, irritability, hallucinations, paranoia and issues with sleeping. However, largely, until Spring 2021, he had only taken psychotropic medication. Yet, generally, he had presented as cooperative with appropriate mood. Moreover, while nervous and somewhat intense, he generally performed adequately during a consultative mental status exam.

(AR 32-33 (emphasis added).)

However, for the reasons explained below, the Court finds the Plaintiff did not unknowingly or unintelligibly waive the right to representation, and more importantly, further finds no demonstrated prejudice or harmful error from the Kings View record that Plaintiff argues was critically discovered after Plaintiff obtained counsel.

As Defendant notes, Plaintiff was repeatedly advised of his right to obtain representation during the claim process. The agency advised him of the right to representation at the initial and reconsideration stages. (AR 242, 249.) The agency then advised him of the right to representation in response to his request for an ALJ hearing. (AR 254, 277, 280-83.) In the notice of hearing, Plaintiff was again advised of his right to representation. (AR 293, 297-98, 306, 310-11.) The notice of hearing contained a detailed explanation of his right to representation and explained what a representative could do. (AR 293, 297-98, 306, 310-11.)
At the hearing before the ALJ, Plaintiff father did not assert that Plaintiff was unable to understand and instead stated that he could "maybe help a little bit" with clarification. (AR 142.) Both Plaintiff and his father advised that they understood when the ALJ explained the difference between a witness and a representative. (AR 142-43.) Plaintiff's father affirmed that he wanted to serve as witness and Plaintiff confirmed this. (AR 143-44.) The ALJ explained to Plaintiff that he had the right to be represented by an attorney or non-attorney representative, that he could seek free representation, and that he could postpone the hearing to seek a representative or proceed on that day. Plaintiff confirmed that he understood the ALJ's explanations and confirmed that he wanted to proceed. (AR 144-45.)

The ALJ then discussed with Plaintiff that it appeared he wanted his father to act as a

1 witness, rather than as a representative. (AR 144.)  Plaintiff advised that this was correct. (AR
2 144.)  The ALJ then explained to Plaintiff that he had the right to be represented by an attorney
3 or non-attorney representative and the ALJ explained tasks that a representative could
4 assist with. (AR 144-45.)   The ALJ also explained that some legal services organizations
5 could provide free representation. (AR 145.)   The ALJ then concluded by advising that
6 Plaintiff could postpone the hearing to retain a representative or they could proceed on the
7 merits without a representative. (AR 145.)   Plaintiff advised that he understood and elected to
8 proceed on the merits of his case without a postponement. (AR 145.)

"The Commissioner . . . is required by statute to 'notify each claimant in writing ... of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner....' [and] [t]his notification must 'also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.' " Roberts v. Comm'r of the Soc. Sec. Admin., 644 F.3d 931, 933 (9th Cir. 2011) (per curiam) (quoting 42 U.S.C. § 406(c); 20 C.F.R. § 404.1706).

The Court finds the agency and ALJ's advisements satisfied the obligation under the Social Security Act regarding the right to representation. See Roberts, 644 F.3d at 933-34 (rejecting plaintiff's argument that in addition to written notices, "the ALJ was required to give him additional information on the value of having an attorney, and his options for securing one," and holding "that no disclosure is required, other than the disclosure required by § 406(c)"); id. ("Roberts does not contend that this statutory requirement was not met here, nor would he have any basis for doing so."). Plaintiff does not make any specific assertions about statements in agency notices or by the ALJ at the hearing, which he did not understand, and does not claim to have not received any of the written notices regarding his right to representation.

While Plaintiff refers to his alleged limitations in mental functioning and mental status findings, Defendant argues this is a red herring proffering this is not an instance where Plaintiff was someone so mentally limited that he could not make a reasoned decision about how to proceed at the hearing. The Court finds this contention supported, as Dr. Michiel opined that Plaintiff could perform a range of simple work (AR 493), Dr. Davis and Dr. Weiss concluded that Plaintiff had at

1  most mild mental limitations (AR 185, 197, 214, 229), and there are no medical opinions that support
2  greater limitations than the ALJ found in the RFC (AR 29).  Significantly, Plaintiff does not address
3  these arguments in any reply.

4  Even assuming *arguendo* that Plaintiff did not understand every question at the
5  administrative hearing,[6] Plaintiff has failed to show how any apparent lack of understanding
6  prejudiced him in any way.  Plaintiff bears the burden of proving how any alleged error
7  prejudiced or harmed the claimant.  See McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011)
8  (citing Shinseki, 556 U.S. 396); Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d 1372, 1378
9  (9th Cir. 1979) ("The claimant mut demonstrate prejudice or unfairness in the administrative
10 proceedings to be entitled to relief by way of remand.") (internal citations omitted).

11 Importantly, as the Duns court noted, "whether or not there was a knowing and intelligent
12 waiver, the real issue is whether, in the absence of counsel, the ALJ met his heightened duty to
13 'conscientiously and scrupulously probe into, inquire of, and explore all the relevant facts' at the
14 hearing so as to protect the claimant's interest." Duns, 586 F. Supp. at 364 (quoting Vidal v.
15 Harris, 637 F.2d 710, 713 (9th Cir.1981)).  This same principle was stated in Roberts.  644 F.3d
16 at 934 (noting "social security hearings are not meant to be adversarial in nature and that the
17 ALJ's duty to explore for relevant facts is heightened in cases involving *pro se* claimants," as one
18 reason why heightened notice regarding representation is not required); see also Bernice H. v.
19 Berryhill, No. 3:17-CV-00957-HZ, 2018 WL 3862303, at *3 (D. Or. Aug. 14, 2018) ("The ALJ's
20 independent duty to fully and fairly develop the record is heightened when a claimant proceeds
21 *pro se*." (citations omitted)).  "Under this heightened duty, the ALJ must 'scrupulously and
22 conscientiously probe into, inquire of, and explore for all the relevant facts' to protect the
23 plaintiff's interests."  Id. (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

24 "Where an ALJ fails to meet this duty and the plaintiff can demonstrate prejudice or

---

[6] The Court acknowledges at one point, as Plaintiff highlights, Plaintiff noted his father's assistance would be helpful. (AR 152 ("Right now, they -- with the medications I'm on, I can't really take -- do too -- do -too much. This is where I need my dad, kind of help me explain things. [INAUDIBLE] ALJ: Okay. Well, we can pull him in in a second. But my question is, when did you last receive unemployment? CLMT: It was the first -- I think it was 'til May 2019 not May, April 2019, May or April. ALJ: … Okay and you felt during that period of time that you could still work?")  However, based on the entire of the testimony, the Court finds the ALJ met his heightened duty to explore and probe into all relevant facts.

unfairness in the administrative proceeding because counsel was not present, remand is warranted." 2018 WL 3862303, at *3 (citation omitted). To demonstrate prejudice, the plaintiff must point to specific facts, arguments, or evidence an attorney would have developed that could have changed the outcome of the proceedings. Id. Thus, "[i]f [the] claimant can demonstrate prejudice or unfairness as a result of the ALJ's failure to fully and fairly develop the record the decision may be set aside." Duns, 586 F. Supp. at 364. In Duns, the court concluded "that the ALJ did not meet his heightened duty and that claimant was prejudiced by lack of counsel at the hearing [as] [t]he ALJ failed to investigate the extent of claimant's limitations on her ability to do basic work activities, particularly her capacity to sit, lift, squat or bend." Id.

While Plaintiff argues that he was prejudiced because of records from Kings View that were obtained after the ALJ's decision,[7] the document from Kingsview simply stated that Plaintiff "has attended/participated in services" and he was diagnosed with schizoaffective disorder (AR 67). Defendant argues it is unclear how this document establishes disabling limitations that the ALJ ignored or disregarded.

The Court agrees based on the ALJ's opinion and specific findings. The ALJ acknowledged Plaintiff's schizoaffective disorder and that he received mental health treatment. (AR 24, 27-28, 32-33). The record in question does not discuss the frequency or duration of Plaintiff's treatment at Kings View, it does not provide any opinions on Plaintiff's limitations, nor does it provide objective medical evidence to corroborate Plaintiff's disability claim. (AR 67.) Plaintiff criticizes the ALJ because he did not obtain this record from Kings View, but he fails to explain what the ALJ or the agency purportedly did wrong or what should have been done differently. The agency requested records from Kings View and they responded that there were no records to produce. (AR 701-05.) Accordingly, the Court finds Plaintiff fails to show that the Kings View document establishes reversible error.

Here, based on review of the hearing transcripts, and the ALJ's opinion as a whole in

---

[7] Beyond the one page document from Kings View, Plaintiff submitted records from other medical providers (AR 44-138). Defendant argues Plaintiff does not argue that any of the other records undermine the ALJ's decision, and thus any argument as to those records is waived. Plaintiff submits no reply to this argument.

1  relation to the entirety of the record, the Court finds there is no indication the ALJ failed to meet
2  the heightened duty applicable to unrepresented parties.  The Court finds no indication the record
3  was not adequate for a determination, particularly in light of the actual information contained in
4  the record in question, and given the thorough discussion of mental health treatment and
5  medication.  C.f. Bernice H., WL 3862303, at *4 ("But the ALJ never provided her with the
6  opportunity to supplement the record [and] [g]iven the inadequacy of the medical records for the
7  relevant period and the indications throughout the record that it was incomplete, the ALJ's
8  heightened duty to develop the record was triggered [and thus] [b]y failing to take any
9  affirmative steps to develop the record, including leaving the record open at the close of the
10 hearing for Plaintiff to supplement her records, the ALJ failed to fulfill this duty.").

11       The Court finds no error warranting remand.  See Burris-Hall v. Astrue, No. CV. 09-
12 6354-MA, 2011 WL 653896, at *4 (D. Or. Feb. 14, 2011) ("Plaintiff correctly contends that an
13 ALJ has a heightened duty to ensure that the record is fully and fairly developed when the
14 claimant is *pro se*[,] . . . [h]owever, plaintiff's conclusory allegation that the ALJ failed to meet
15 'his multiple duties' is insufficient to establish that the ALJ should have developed the record.").
16 Plaintiff has submitted no reply addressing Defendant's arguments presented in the opposition,
17 and no reply addressing the legal standards pertaining to the adequacy of the written notices here,
18 nor as to the lack of prejudice given the content of the Kings View record in relation to the ALJ's
19 opinion and findings as a whole.  See Duns, 586 F. Supp. at 364; Roberts, 644 F.3d at 934.
20 Based on the applicable caselaw and regulations before the Court, the Court concludes Plaintiff
21 has not demonstrated that the ALJ erred by failing to further develop the record.  See Smolen, 80
22 F.3d at 1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch,
23 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the
24 ALJ's conclusion that must be upheld.").
25 / / /
26 / / /
27 / / /
28 / / /

# V.

# CONCLUSION AND ORDER

In conclusion, the Court rejects the Plaintiff's challenges and finds no error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED, and Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Brian J. Pennington.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **February 6, 2024**

UNITED STATES MAGISTRATE JUDGE